## KINGS COUNTY COURT OF SESSIONS.

### THE PEOPLE agt. JAMES GRIFFIN.

Common *receipts* are not "personal property" within the statute defining larceny;
consequently larceny cannot be committed thereof.

But *certificates of stock* of an incorporated company, are within the statutory defini-
tion of personal property, and are the subjects of larceny.

On a trial for grand larceny in stealing such certificates of stock, it is incumbent
on the people to prove the value of the stock; and in the absence of any
evidence upon the subject of such value, the court must presume it to be nominal
merely.

*September Term,* 1869.

MOTION by defendant to set aside conviction for grand
larceny.

JOHN SEDGWICK, *counsel for defendant and motion.*
S. D. MORRIS, *district attorney, opposed.*

TROY, J.—The prisoner was convicted of grand larceny
at the last term of this court, in feloniously stealing a tin
box of the value of five dollars, and certain papers described
as instruments in writing, consisting of three several receipts
for money, and three certificates of stock in incorporated
companies. Each receipt was for more than twenty-five
dollars, and each certificate was for a number of shares, pur
porting to be of the value of more than twenty-five dollars.
Upon the trial, no evidence was offered as to the value of those
documents, for the reason, as was claimed by the prosecution,
that the statute fixed such value, and the court so held for
the purposes of the trial, reserving, however, the final
determination of the question for subsequent consideration.
It was contended by the defendant's counsel that the receipts

were not personal property within the meaning of the statute, and that consequently larceny could not be committed thereof, and this point was disposed of in the same manner. The prisoner now moves to set aside the conviction, and in deciding the motion, I shall examine the questions in the inverse order.

Larceny at common law could only be committed of goods which had some worth in themselves, and did not derive their value merely from their relation to some other thing, hence written instruments were not the subject of larceny whether they related to real estate or concerned mere choses in action. If they related to real estate the taking was merely trespass, for the reason that such insruments were supposed to savor of the realty and were considered a part thereof, descendible with it to the heir; and if they were mere choses in action as bonds, bills or notes, they were held not to be goods whereof larceny could be committed, being of no intrinsic value and not importing any property in the possession of the person from whom they were taken. (1st *Hawkins Pleas of the Crown C.*, 32 *S.*, 35; 4, *Blackstone's Comm.*, 234; 2d *East Pleas of the Crown C.*, 16 *S.*, 35 *p.*, 597; 2d *Russell on Crimes* 69, and sergeant Hawkins says the reason why a felony could not be committed of such things was that "being of no use but to the owner, they are not supposed to be so much in danger of being stolen, and therefore need not be provided for in so strict a manner as those things which are of a known price and everybody's money." (*The King* agt. *Webster*, 1 *Leach Cr. C.*, 16; 1 *Hawkins, P. C.*, 142;) Various laws were passed from time to time in England for the protection of this kind of property, all of which were consolidated by the *7th and 8th Geo.*, 4 *C.* 27, 85, and those acts made the stealing of every species of valuable written security a felony of the same nature and degree and punishable in the same manner as the stealing of any chattels of like value. The law also fixed the value of such property,

but no instrument in the nature of a common receipt or acknowledgment for money paid in full, or partial discharge of an indebtedness is enumerated or included within the general language of the acts; and it is clear from the careful phraseology employed that it was not the intention to protect documents, the obstruction of which from the possessor could neither injure him nor benefit the thief.

The same principle seems to have guided the framers of our statute upon this subject, which declares after defining the crimes of grand and petit larceny;" grand larceny being the felonious taking and carrying away the personal property of another of the value of more than twenty-five dollars; and petit larceny the stealing, taking and carrying away the personal property of another of the value of twenty-five dollars, or under; that " the term personal property as used in this act shall be construed to mean goods, chattels, effects, evidence of right in action, and all written instruments by which any pecuniary obligation or any right or title to property, real or personal, shall be created, acknowledged, transferred, increased, defeated, discharged or diminished." (2d Rev. Stat., 726, S., 33.) This statute has reference very clearly to instruments which as such merely, have the legal effect and operation contemplated thereby. The instrument of itself alone must create, acknowledge, transfer, increase, defeat, discharge, or diminish a pecuniary obligation or a right or title to property, real or personal.

Now common receipts such as are described in the indictment cannot be properly called instruments at all, for such documents have no legal effect as instruments whatever, they are at most but acknowledgments in writing of full or partial payment and may be used in evidence to prove such payment. But they cannot be pleaded, and when proven may be explained or contradicted; they are mere written admissions and can only be treated as such. Not so with releases either general or special; those are instruments having a recognized legal force and effect, they may be

pleaded and when proven can only be impeached for fraud or want of consideration, and any legal consideration is sufficient to suport them. There is a broad distinction between legal instruments which are acts and mere written admissions which are only evidence. And this is the difference between a common receipt and such an instrument as is contemplated by the statute. This question was passed upon in the case of *People agt. Bradley*.

4 *Parker's Criminal Reports, p.* 245, and the principles there laid down are entirely in accordance with the law as I understand it, and the distinction is noted between common receipts and accountable receipts, warehouse receipts and others of such nature. Receipts of this latter description are undoubtedly the subject of larceny, but I am satisfied that common receipts were not intended to be and are not embraced within the provisions of the statute. It is unnecessary in examining this part of the case to refer to the section regulating and declaring the value of said instruments as within the statute, inasmuch as it can have no application whatever to a writing not within the act. I shall call attention to its provisions, however, hereafter in connection with the remaining questions in the case.

It is contended that the certificates of stock are not within the statutory definition of personal property, but that if they should be so considered, then it is claimed that the law affixes no value to them, and none having been proven, the conviction must be reversed.

The certificates, it is true, do not create, transfer, increase, defeat, discharge or diminish any pecuniary obligation or any right or title to property real or personal. They " acknowledged," however, the right and title of the holder to a certain number of shares of stock in the several corporations by which they were issued, and are evidences of such right and title. This, in my judgment, brings them within the protection of the statute defining the term " personal property."

In the absence of proof of value, however, a further inquiry arises to determine which recourse must be had to the revised statutes, see——volume, third section, wherein it is declared that "if the property stolen consists of any bond, covenant, note, bill of exchange, draft, order, or receipt, or any other evidence of debt or of any public security issued by the United States, or by this state, or of any instrument whereby any demand, right or obligation shall be created, increased, released, extinguished or diminished, (except such as are specified in the next section) the money due thereon or secured thereby and remaining unsatisfied, or which, in any event or contingency, might be collected thereon or the value of the property transferred or affected thereby, as the case may be, shall be deemed the value of the article so stolen." It will be observed that this section merely regulates the manner of fixing the value of such instruments as it provides for. It does not at all enlarge the defenition of what constitutes personal property, and the word "receipt," used therein, must be regarded as applying simply to such receipts as come within the description of the other section.

A distinction is thus made between instruments " upon which money is due, or by which money is secured and remaining unsatisfied or upon which money in any event or contingency might be collected—and instruments whereby property as distinguished from money is transferred or affected. As regards the first, it declares that the money due or secured and remaining unsatisfied, or which might be collected thereon shall be deemed the value of the instrument, and as to the second, that the value of the property transferred or affected by the instrument shall be deemed the value thereof. In the first case the value of the instrument is assertained by a reference to the amount expressed therein and remaining unsatisfied, and although as a matter of fact it may be utterly worthless or but of mere nominal value, such worthlessness cannot be shown or the

real value litigated, for the law fixes what it shall be. In the second case the value of the property transferred or affected must be proven in the ordinary way and is open to litigation, and although the value of the property may be declared in the instrument itself, the party charged with the larceny thereof is not bound thereby, for it is the real value of the property that must fix the grade of the offense and not the value fixed by the parties to the instrument which may or may not be correct. As the certificates are of this latter class, it was incumbent on the people to prove the value of the stock. The omission to do so may be accounted for perhaps by the suggestion that they are utterly worthless. Regarding them as personal property, however, in the absence of any evidence upon the subject of value the court cannot presume such value to be other than nominal. The tin box was proven to be worth five dollars, this would warrant a verdict for petit larceny only, and as the verdict was for grand larceny it must be set aside and a new trial ordered.